KNOLL, J.,
additionally concurring with reasons.
|,The lower courts erred in finding no genuine issue of material fact existed as to whether the East Baton Rouge Parish Sheriffs Office fulfilled its duty owed to George Turner, a 40-year-old inmate who became ill while incarcerated in the East Baton Rouge Parish Prison, allegedly as a result of his family members being denied the ability to provide him with his prescription medication, and who died shortly thereafter. For the following reasons, I find the lower courts erred as a matter of law in finding the Sheriffs Office’s assertion its compliance with its own East Baton Rouge Parish Prison Inmate Rules and Regulations is sufficient to ensure the Sheriffs Office did not breach its duty of care to Mr. Turner. Accordingly, I concur in this Court’s order reversing the Trial Court’s grant of summary judgment and remanding for further proceedings.
DISCUSSION
Summary judgment is properly granted where there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). This Court applies a de novo standard of review in considering lower court rulings on summary judgment motions. Jackson v. City of New Orleans, 12-2742 (La.1/28/14), 144 So.3d 876, 882, reh’g denied (Apr. 4, 2014), cert. denied sub nom. Jackson v. City of New Orleans, La., — U.S. -, 135 S.Ct. 197, 190 L.Ed.2d 130 (2014).
George Turner, the son of Rochelle Landry, the plaintiff, was booked into the East Baton Rouge Parish Prison on several misdemeanor charges on February 9, 2012. The plaintiff alleges Mr. Turner completed a medical intake form and medical screening form upon arriving at the prison, whereon Mr. Turner marked that he was on dialysis, required prescription medication, had a history of seizures, and had a blood clotting disorder. The plaintiff alleges Mr. Turner did not receive any prescription medicine until February 17, 2012. On February 18, 2012, Mr. Turner suffered a seizure and was transported to Earl K. Long Hospital. He never regained consciousness and died on February 27, 2012.
Prior to Mr. Turner’s seizure, plaintiff alleges Mr. Turner’s sister, Ms. Billie Jean Sheppard, attempted to provide the Sheriffs Office with Mr. Turner’s prescription medication. Plaintiff alleges Ms. Sheppard and Mr. Turner himself repeatedly informed the Sheriffs Office that Mr. Turner would die without his medications. Plaintiff filed suit for wrongful death and a survival action against the East Baton Rouge Sheriffs Office, Sid J. Gautreaux, in his official capacity as sheriff of East Baton Rouge Parish (“defendants”), and “East Baton Rouge Parish Emergency Medical Services.”[1] Sheriff Gautreaux, in his motion for summary judgment, asserted “the undisputed facts show that (1) Prison Medical Services [a division of the Parish of East Baton Rouge Department of Emergency Medical Services] is the sole provider of medical care to inmates housed in East Baton Rouge Parish Prison; (2) Prison Medical Services personnel are responsible for prescribing appropriate medication to prisoners; (3) Prison Medical Services personnel are responsible for dispensing prescribed medication to prisoners; and (4) [Sheriff Gautreaux] fulfilled his duty and complied with Physician’s Or *380 ders by transporting George Turner to dialysis three times per week.”
| ;Jn support of his motion for summary judgment, Sheriff Gautreaux submitted an affidavit of the warden of East Baton Rouge Parish Prison, Denise Grimes, a copy of inmate transportation logs showing when Mr. Turner was transported for dialysis, a copy of the East Baton Rouge Parish Prison Inmate Rules and Regulations, and a copy of the-East Baton Rouge Parish Prison Intake Form signed by Mr. Turner. In opposition, Ms. Landry submitted the affidavit of Ms. Sheppard, which stated “she tried numerous times to provide East Baton Rouge Parish Prison with Mr. Turner’s prescription medicines and/or the information regarding what medicines Mr. Turner required, but her requests were denied each time.” Specifically, Ms. Sheppard asserts she informed Officer Moore with the Sheriffs Office and Nurse Thomas, presumably an employee of Prison Medical Services, of Mr. Turner’s need for medication.
The Trial Court included no factual findings in its order granting summary judgment for the defendant, instead referring to its previous oral reasons. At the hearing on the motion for summary judgment on July 29, 2013, the Trial Court found the law was “on all fours” with the defendant’s position, agreeing with the defendant’s reasoning the legislature shifted the responsibility to the governing authority of each parish: “The statute is clear.... There’s no duty that’s been breached that belongs to the Sheriff in this. It has to go through the physician, which is the parish, before they can bring it [prescription medications] in.”[2]
The defendant argued before the lower courts that because La. R.S. § 15:703[3] *381 requires the governing authority of each parish, rather than the Sheriffs |40ffice,[4] to arrange for health care services for prisoners in parish jails, the Louisiana Legislature relieved the Sheriffs Office of responsibility regarding prisoner healthcare. However, the First Circuit correctly rejected this argument, noting that confining authorities such as the Sheriffs Office still have a legal obligation towards inmates, and that the standard of care imposed upon a confining authority in providing for the medical needs of inmates is that the services be reasonable. Landry v. East Baton Rouge Sheriff's Office, 14-0733, p. 5 (La.App. 1 Cir. 3/9/15), 2015 WL 1033767 (unpublished opinion); Wells v. Louisiana Dept. of Public Safety and Corrections, 46-428, p. 27 (La.App. 2d Cir. 8/24/11), 72 So.3d 910, 926 writ denied, 11-2637 (La.2/10/12), 80 So.3d 474; Calloway v. City of New Orleans, 524 So.2d 182 (La.App. 4th Cir.1988), writ denied, 530 So.2d 84 (La.1988). However, the Court of Appeal affirmed the Trial Court’s ruling, finding “there is no showing that Sheriff Gautreaux violated his own established procedures or that he otherwise had reason to know that the medical care being provide by Prison Medical Services was not reasonable.” However, as shown below, the plaintiff has alleged the Sheriffs Office was repeatedly informed of Mr. Turner’s lack of adequate care, supported by the affidavit of Ms. Sheppard. Thus, the Sheriffs Office may have had reason to know Prison Medical Services’ care was not reasonable.
Both parties below placed much emphasis on their conflict interpretations of the following East Baton Rouge Parish Prison Rules and Regulations provision:
Family or friends PENDING PRISON PHYSICIAN AUTHORIZATION AND APPROVAL may bring medications into the facility. This will be accomplished through verification with prescribing physician and/or pharmacy.
(Emphasis in original.)
Regardless of how this rule is interpreted, the Sheriffs Office does not have the authority to wholly abdicate its responsibility for the well-being of its inmates. On the contrary, the Sheriff Office’s own Rules and Regulations affirm its duty to the inmates:
23. Medical Services:
a. Inmates at the East Baton Rouge Parish Prison have the right to have access to and receive medical services necessary for maintaining their physical health.... The Prison’s responsibility is limited to security and transportation of inmates for medical services and insuring inmate access to medical services ....
*382 Here, the plaintiff has alleged facts which, if true, constitute a failure on the part of the Sheriffs Office to facilitate adequate access to medical services, as well as a failure to act reasonably to avoid a foreseeable harm. Plaintiff alleges that Mr. | (¡Turner “constantly” implored the prison guards that he was not receiving his prescriptions, and that he could die if he did not receive them. Yet, despite the diligent, repeated efforts of Mr. Turner and his sister, Mr. Turner never received these critical medicines and, as a result, suffered a life-ending seizure while in the custody of the East Baton Rouge Parish Prison. This should never have happened. The Sheriffs Office had a clear duty of reasonable care toward Mr. Turner, and additional fact-finding is needed to uncover, among other things, any actions taken or communications made by members of the Sheriffs Office in possession of information regarding Mr. Turner’s medical needs, and the relationship between the Sheriffs Office and the medical services provider. If members of the Sheriffs Office were told by Mr. Turner and his sister that Prison Medical Services had failed to provide any prescription medicine, the Sheriffs Office should have timely ensured Prison Medical Services was aware of this asserted need. Furthermore, Ms. Sheppard’s affidavit states “she spoke with nurse Thomas [sic] at the prison regarding Mr. Turner’s prescription medicines, who informed her the only reason the prison would contact a family member regarding inmates would be to inform the family that the inmate was dead.” If any members of the Sheriffs Office knew or should have known of the content of this discussion or of similar responses to .requests for prescription medicine, then the Sheriffs Office failure to take action when faced with Prison Medical Services’ decision to ignore Mr. Turner’s urgent request for medical care may well fall below the standard of reasonable care. Thus, genuine issues of material fact remain as to whether the defendant breached its duty to Mr. Turner.
The confining authority’s duty of care to the inmate is fundamental and rooted not only in tort but also in constitutional law. The U.S. Supreme Court has held that “deliberate indifference to serious medical needs of prisoners” is cruel and unusual punishment proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). “An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.” Id. at 102, 97 S.Ct. 285.
In conclusion, I find that the relevant provisions of La. R.S. § 15:703 and the East Baton Rouge Parish Prison Rules and Regulations, which delegate responsibility for inmates’ medical care to “the governing authority” and “the prison physician,” respectively, do not by themselves allow plaintiffs claims to be defeated via summary judgment. Even if they were correctly followed, the Sheriffs Office’s procedures may well be inadequate to meet the Office’s duty to. provide for the reasonable medical care of its inmates. Genuine issues of material fact remain regarding whether the defendant breached its duty to Mr. Turner.

. The claims against Emergency Medical Services are subject to the Louisiana Medical Malpractice Act, La. R.S. § 40:1299.41, et. seq., and are not under review in this application.

. The First Circuit, reviewing the Trial Court's reasoning, stated: “We observe that the trial court did not conclude that Sherriff Gautreaux did not owe a duty to Mr. Turner, but rather it concluded that Sheriff Gautreaux did not breach any duty owed by him to Mr. Turner.” However, a review of the Trial Court's oral reasons in its entirety suggest the Trial Court agreed with the defendant's interpretation of law, which would relieve the Sheriff of any responsibility for inmate medical care: "... [W]e're not trying to shift responsibility. The Louisiana Legislature did that. They provided that the medical facility at the prison is the sole responsibility of the city parish.” At the end of the defendant’s remarks, the Court responded "... You’re right. You're right.”

. La. R.S. § 15:703 provides:
§ 703. Physician to be appointed for each parish; salary
A.The governing authority of each parish shall appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick. His salary shall be fixed by the governing authority. Any physician so appointed shall be licensed as provided in R.S. 37:1271 and shall be a qualified health care provider in accordance with R.S. 40:1299.42.
B. In lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider, licensed or regulated by the laws of this state, to provide requisite health care services, as required in this Section. The term "health care provider” as used in this Subsection means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or regulated by the laws of this state to provide health care services or professional services as a physician and qualified as such in accordance with R.S. 40:1299.42.
C. When a physician has been appointed or a contract for health care services for prisoners has been entered into in accordance with this Section, any action by a prisoner or his representative to recover damages or any other losses, including those for the death of the prisoner, as a result of the actions or inactions of the physician or health care provider in the performance ór nonperformance of health care services shall be governed by the provisions of R.S. 40:1299.41 et seq. The term “health care provider” as used in this Sub *381 section shall be as defined in R.S. 40:1299.41.
D. The sole responsibility of the governing authority of each parish which is mandated by the provisions of this Section with respect to providing health care services for prisoners shall be the appointment of a physician and the payment of the salary of that physician or its contractual obligations with a health care provider selected in accordance with this Section. The parish and its governing authority shall not be liable for any action arising as a result of the actions or inactions of the physician or health care provider, whether ex delicto or ex quasi delicto or ex contractu, by a prisoner or his representative to recover damages or any other losses, including those for the death of the prisoner, unless the governing authority exercises gross negligence or willful misconduct in the performance of its duties and obligations imposed by this Section, and such gross negligence or willful misconduct was a substantial factor in causing the injury.

. See, e.g., La R.S. § 15:705(A)(2), which provides the "sheriff or governing authority" may collect reimbursement for certain expenses (emphasis added).